1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT
9                SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  SHYNITA PHILLIPS ABU,<br><br>12                              Plaintiff,<br>13  v.<br>14  COUNTY OF SAN DIEGO, DAVID<br>15  LOVEJOY, AND DOES 1-10,<br>    inclusive,<br>16<br>17                              Defendants. | Case No.:  3:21-cv-01622-BTM-<br>AGS<br><br>**ORDER RE MOTION TO<br>DISMISS**<br><br>**[ECF NO. 6]** |

18
19        Pending before the Court is Defendants' motion to dismiss the complaint for
20  failure to state a claim. (ECF No. 6 ("Mot.").)[1] For the reasons discussed below,
21  the motion is **GRANTED** in part and **DENIED** in part.
22                              **BACKGROUND**
23        On September 15, 2021, Plaintiff Shynita Phillips Abu filed a complaint
24  against the County of San Diego, Deputy David Lovejoy ("Deputy Lovejoy"), and
25  ten unnamed employees of the County of San Diego Sherriff's Department ("DOES
26
27  _____
28  [1] Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page
    numbers at the top of documents.

1-10") alleging violations of her civil rights and California law. (ECF No. 1 ("Compl.").) The complaint alleges that on October 1, 2020, Plaintiff noticed Deputy Lovejoy alone in his police vehicle staring at her when she was stopped at a red traffic signal. (*Id.* at 5 (¶ 20).) When the light turned green, Plaintiff proceeded to drive, and Deputy Lovejoy followed her. Eventually, Deputy Lovejoy activated his emergency lights and pulled Plaintiff over. (*Id.* (¶¶ 22-23).)

As Deputy Lovejoy approached Plaintiff's passenger side, Plaintiff began recording the encounter on her cell phone. (*Id.* (¶ 24).) Plaintiff alleges Deputy Lovejoy falsely told Plaintiff he stopped her because her brake light was out, even though all her brake lights were functioning. (*Id.* (¶ 25).)

After confirming Plaintiff had a driver's license, Deputy Lovejoy then moved to Plaintiff's driver's side and "opened the front door, unbuckled PLAINTIFF's seat belt, and grabbed her by the wrists." (*Id.* at 6 (¶ 28).)  Plaintiff asked Deputy Lovejoy why he was arresting her, and Deputy Lovejoy responded that he wasn't arresting her "right now." (*Id.* (¶ 29).) Deputy Lovejoy did not answer when Plaintiff asked why he was touching her. He further shouted at Plaintiff to put her phone down and Plaintiff responded that she was recording for her safety. (*Id.* (¶ 31).) He then smacked the phone out of Plaintiff's hand, cracking the screen. (*Id.* (¶ 32).)

According to the complaint, Deputy Lovejoy then "grabbed PLAINTIFF by her braided hair and yanked her out of the car, ripping several braids of hair from PLAINTIFF's scalp." (*Id.* (¶ 33).) Plaintiff alleges she did not physically resist in any way. (*Id.* (¶ 35).) Then, "additional deputies arrived and, along with LOVEJOY, they handcuffed PLAINTIFF and shoved her in the back of a police vehicle." Deputy Lovejoy and the "other deputies" then "rummaged" through Plaintiff's car, including the trunk. Nothing illegal was recovered. (*Id.* (¶¶ 36-37).)

Plaintiff alleges that she was kept in the police cruiser during sweltering, record-breaking heat (104 degrees Fahrenheit), with windows rolled up and the air conditioning off for several hours. (*Id.* at 6, 9 (¶ 38-39, 54).) When Deputy Lovejoy

attempted to transport Plaintiff to Las Colinas jail, Plaintiff was refused due to excessive heat injuries and the jail advised Deputy Lovejoy to take Plaintiff to the hospital. (*Id.* at 7 (¶ 40).)

After taking Plaintiff to the hospital, and upon instructions by his supervisor, Deputy Lovejoy released Plaintiff without charges or citations. (*Id.* (¶ 41).) Plaintiff requested Deputy Lovejoy remove her handcuffs that were causing her pain and take her somewhere safe, but instead Deputy Lovejoy dropped her off at the Santee trolley stop with no way to purchase a ticket. (*Id.* (¶¶ 42-46).) Plaintiff was released around 10:00 p.m. without her cell phone, money, or personal belongings. She could not retrieve her car until the next morning. (*Id.* (¶ 43).) According to Plaintiff, when she asked how she will pay for the trolley, Deputy Lovejoy said "I'm not telling you to break the law, but if you need to get on the trolley then take the trolley. It sucks to suck!" (*Id.* (¶ 47).)

Plaintiff claims that she suffered severe physical pain, injuries and soreness to her wrists and shoulders from being placed in overly tight handcuffs for several hours, injuries to her head from having hair ripped from her scalp, lacerations to her head and body, and severe emotional distress from the encounter. (*Id.* at 8 (¶ 51).)

The complaint sets forth three claims for relief under the Fourth Amendment pursuant to 42 U.S.C. § 1983: 1) Illegal Detention and Arrest, 2) Unlawful Search of Vehicle and Personal Property, and 3) Excessive Force. The complaint also alleges three California state law claims: 1) False Arrest/ False Imprisonment, 2) Negligence, and 3) Cal. Civ. Code § 52.1 (The Bane Act). Defendants now moves to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot.)

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 8, each pleading must include "a short

and plain statement of the claim showing that the pleader is entitled to relief" and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).

A complaint may survive a motion to dismiss only if it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "[l]eave to amend should be granted unless the pleading 'could not possibly be cured by the allegation of other facts.'" *Velez v. Cloghan Concepts LLC*, 387 F. Supp. 3d 1072, 1078 (S.D. Cal. 2019) (quoting *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003)).

## DISCUSSION

### 1.  42 U.S.C. § 1983 Claims as to DOES 1-10

Defendants seek dismissal of Plaintiff's constitutional claims as to DOES 1-10 on the basis that the complaint does not establish how each individual DOE defendant is liable and instead groups them all together as "deputies" and "individual defendants" in a generalized and conclusory way. The Court agrees.

"A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of [her] civil rights*." Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). A plaintiff cannot attribute liability to a group of unidentified defendants. Instead, she must set forth facts as to each defendant's alleged wrongdoing. *Knight v. Doe*, 2019 U.S. Dist. LEXIS 176706, *7 (S.D. Cal. 2019). Additionally, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. Iqbal*, 556 U.S. at 676.

The complaint's factual allegations are insufficient as to the involvement of DOES 1-10. The complaint alleges DOES 1-6 are "Sheriff's deputies for the County of San Diego Sheriff's Department," DOES 7-8 are "supervisory deputies for the County of San Diego Sheriff's Department," and DOES 9-10 are "managerial, supervisorial, and policymaking employees of the County of San Diego Sheriff's Department." (Compl., 3-4 (¶¶ 9-11).) But the factual allegations only vaguely refer to "deputies." For example, the complaint alleges that "additional deputies arrived and, along with LOVEJOY, they handcuffed PLAINTIFF and shoved her in the back of a police vehicle," "LOVEJOY and other deputies rummaged through PLAINTIFF'S car," and "Lovejoy and the other deputies kept PLAINTIFF confined [in the car]." (*Id.* at 6-7 (¶¶ 36-37, 39).) While Plaintiff attempts to clarify and bolster the allegations using brackets in her response (e.g., "[Lovejoy and DOES 1-10]," ) this is outside of the complaint and still fails to distinguish the DOE defendants. (ECF No. 7 ("Pl's. Resp."), at 7.)  Accordingly, the complaint has not stated liability as to each individual defendant. *Cuda v. Emples./Contrs./Agents*, 2019 U.S. Dist. LEXIS 78849, *7-8 (D. Haw. 2019) ("A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but [s]he must allege specific facts showing how each particular doe defendant violated [her] rights"); *see also Hawkins v. San Diego Cty.*, 2021 U.S. Dist. LEXIS 29057, *14-15 (S.D. Cal. 2021) ("[Plaintiff] has named 'Does 1-10' but … he makes no specific

allegations against any individual Doe in relation to the constitutional violations which form the basis of his suit. Simply put, [Plaintiff] fails to link any particular constitutional violation to any specific, individual state actor, and he fails to even minimally explain how each individual Doe party he seeks to sue personally caused a violation of his constitutional rights).

Similarly, the complaint does not establish a cause of action based on supervisory or policymaking liability. A supervisor can only be liable for constitutional                                  violations                                  of subordinates if the supervisor participated in or directed the violations or knew of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Here, the complaint vaguely alleges that DOES 1-6 acted "on the implied and actual permission and consent of DOES 7-10," (Compl., 4 (¶ 13)), but, without more, this allegation is exactly the kind of conclusory and general statement barred by *Iqbal. Iqbal,* 556 U.S.at 663. Moreover, while the complaint groups DOES 1-10 together as "deputies," DOES 9-10 are not alleged to be deputies and therefore there are no factual allegations pertaining to them at all. (Compl., 4 (¶ 11).) The only express reference to a defendant acting in any supervisory capacity is that "one of LOVEJOY's superiors instructed LOVEJOY to release PLAINTIFF without any charges or citations." (*Id.* at 7 (¶ 41.) Therefore, it is wholly unclear which DOE defendants were at the scene and what their specific involvement entailed.

Defendants further claim that the complaint alleges no facts supporting the integral participation of DOES 1-10. "An officer's liability under section 1983 is predicated on his 'integral participation' in the alleged violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (quoting *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996)). This standard demands "fundamental involvement" in the conduct that allegedly caused the violation, which requires more than being a "mere bystander" to a colleague's conduct. *Williams v. Cal.*

*Highway Patrol*, 2012 U.S. Dist. LEXIS 54063, *8-9 (S.D. Cal. 2012). "Fundamental involvement requires some affirmative support at the scene of the alleged violation, knowledge or reason to know of the plan to commit the alleged violation, and failure to object." *Jimenez v. City of Napa*, 2017 U.S. Dist. LEXIS 93284, *7 (N.D. Cal. 2017). Unless and until the complaint clarifies facts illuminating each DOE defendant's individual involvement, the Court finds that there are insufficient facts to determine if any or all of DOES 1-10 participated in the alleged conduct in a manner that subjects them to liability, and they are dismissed.

### 2. Qualified Immunity

Defendants also claim that Deputy Lovejoy and DOES 1-10 are entitled to qualified immunity.

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to Plaintiff, demonstrate that the Defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Although *Saucier* originally required the Court to answer these questions in order, the U.S. Supreme Court has since held that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For the reasons explained above, the Court will not address the issue of qualified immunity as to DOES 1-10 as they are dismissed for failure to state a claim for relief and therefore the Court cannot determine if immunity would apply under *Saucier's* first inquiry. *Saucier*, 533 U.S. at 201.

As to Deputy Lovejoy, the complaint alleges three plausible constitutional violations: illegal detention and arrest, unlawful search of vehicle, and excessive force. Defendants assert qualified immunity as to all constitutional claims, arguing that Plaintiff cannot show that "removing Plaintiff from her vehicle using her hair, placing her under arrest, and searching her car while she waited in a warm patrol vehicle, after a disagreement regarding a traffic violation" violated clearly established law. (Mot., at 9.) However, the Defendants' rendition of the facts does not view them in the light most favorable to the Plaintiff, as is required at this stage. *Saucier*, 533 U.S. at 201. Qualified immunity for Deputy Lovejoy turns on *Saucier's* second inquiry.

A government official "cannot be expected to predict the future course of constitutional law, but [the official] will not be shielded from liability" for acts that violate clearly established constitutional rights. *Procunier v. Navarette*, 434 U.S. 555, 562 (1978) (citations omitted); *see also Harlow*, 457 U.S. at 818. This inquiry must be "'undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (*per curiam*) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*). To constitute "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This does not require a case on all fours, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (*per curiam*) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)).

## A. Alleged Illegal Detention and Arrest

Plaintiff alleges that Deputy Lovejoy had no cause to pull her vehicle over or arrest her. Instead, Deputy Lovejoy lied about Plaintiff's brake light deficiency and pulled her over without reason. It has long been established that an officer must

have at least reasonable suspicion that a car's driver has violated a traffic law to justify stopping the car. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000). According to Plaintiff's version of events, Lovejoy pulled her over without any information or suspicion that she committed any violation. (Compl., 8 (¶ 53).)  Based on the complaint, there was no "disagreement," but rather the stop was pretextual. (*Id.* at 5 (¶ 25)) ("LOVEJOY falsely claimed he stopped PLAINTIFF because her 'third brake light' was out despite the fact that all of her brake lights were functioning.") Taking these facts as true, the traffic stop clearly violated the law, and Lovejoy does not enjoy qualified immunity.[2]

## B. Alleged Unlawful Search of Vehicle and Personal Property

Similarly, Plaintiff alleges Deputy Lovejoy lacked cause to search her vehicle because he simply had no information that Plaintiff committed a crime, had outstanding warrants, or harmed any person. (Compl., 8 (¶ 53).) The law is also well-established that probable cause is necessary for a warrantless search of vehicle for contraband or evidence of a crime. *California v. Acevedo*, 500 U.S. 565, 580 (1991). Additionally, Deputy Lovejoy could not have reasonably believed probable cause existed for the arrest under the circumstances to justify the search, because as alleged, he knew Plaintiff committed no violation. *Hunter v. Bryant*, 502, U.S. 224, 228 (1991). As such, Deputy Lovejoy does not get the benefit of qualified immunity.

## C. Alleged Excessive Force

Plaintiff's excessive force claim is premised on Deputy Lovejoy pulling her out of her car by her hair and ripping her braids, and confining Plaintiff in a sweltering hot vehicle in excessively tight handcuffs for several hours. The Fourth Amendment governs not only whether a person or thing is subject to seizure, but

---

[2] Because the facts must be taken as true in the light most favorable to Plaintiff, Deputy Lovejoy made no mistake of fact as to Plaintiff's brake light.

also "the manner in which a … seizure is conducted." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). "To determine the constitutionality of a seizure "[the Court] must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* (citation omitted).

### i. Ripping Plaintiff's Hair Braids from Her Scalp

"[T]he use of excessive force by officers in effecting an arrest was clearly proscribed by the Fourth Amendment at least as early as 1985 [in *Garner*]." *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993). Indeed, "[t]he principle that it is unreasonable to use significant force against a suspect who was suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to have resisted arrest, was thus well established in 2001." *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1168 (9th Cir. 2011). Use of substantial force, such as grabbing Plaintiff by the wrist and yanking Plaintiff out of her vehicle by her hair after smacking down her phone, has been deemed unreasonable under this circuit's case law, especially when there was no initial attempt to remove Plaintiff from her vehicle using less force. *See Redmond v. San Jose Police Dep't*, 2017 U.S. Dist. LEXIS 190087, *65-66 (N.D. Cal. 2017), *Ibarra v. Snohomish Cnty.*, 2016 U.S. Dist. LEXIS 105181, *29 (W.D. Wash. 2016); *see also Blankenhorn*, 485 F.3d at 481 ("we need look no further than Graham's holding that force is only justified when there is a need for force…this principle would have put a prudent officer on notice that [using substantial force] without first attempting a less violent means of arresting…was a violation of that person's Fourth Amendment rights."). Here, ripping Plaintiff's braids from her scalp in the face of minimal or non-existent resistance resulted in injuries to Plaintiff's head. (Compl., 8 (¶ 51).) The Court finds that the law was clearly established such that a reasonable officer under the circumstances would be on noticed that the amount of force used on Plaintiff was unconstitutional. Therefore, Deputy Lovejoy is not entitled to qualified immunity on

this allegation as well.

### ii.    Plaintiff's Confinement in a Hot Vehicle for Several Hours

In *Hope v. Pelzer*, the Supreme Court held that prison officials violated the Eighth Amendment when they exposed a prisoner to the sun for seven hours while handcuffing him to a hitching post and subjecting him to thirst, taunting, and deprivation of bathroom breaks. 536 U.S. 730, 738 (2002). In applying *Hope*, the Sixth Circuit determined that a post-arrest detention in a police vehicle "with the windows rolled up in ninety-degree heat for three hours constituted excessive force" under the Fourth Amendment. *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002). "Although the Ninth Circuit has not squarely addressed the issue of a post-arrest detention in a hot, unventilated police vehicle in a published decision, it appears that this conduct can constitute excessive force under the Fourth Amendment." *Gomez v. Norris*, 2020 U.S. Dist. LEXIS 112620, *10-11 (E.D. Cal. 2020) (citing *Kassab v. San Diego Police Dep't*, 453 Fed. App'x 747, 748 (9th Cir. 2011) (unpublished)); *see also Gonzalez v. E. L.A. Sheriff Dep't*, 2020 U.S. Dist. LEXIS 100364, *8 (C.D. Cal. 2020). In *Kassab*, the Ninth Circuit reversed the district court's grant of summary judgment to the defendants pertaining to allegations that the plaintiff was "detained in a police car for more than four hours, with the windows rolled up, no air conditioning, and an interior temperature of 115 degrees." *Kassab*, 453 Fed. Appx. 747, 748. In contrast, brief periods of uncomfortable conditions such as a hot patrol car would not amount to a constitutional violation. *Arias v. Amador*, 61 F. Supp. 3d 960, 976 (E.D. Cal. 2014). "In sum, in cases where confinement in a vehicle amounted to excessive force, the exposure had been prolonged (i.e. three hours in *Burchett*, 310 F.3d at 945). In contrast, federal district courts have found that force was not excessive when the confinement lasted thirty minutes or less." *Id.*

In that light, and taking into account well-settled principles of excessive force jurisprudence that the intrusion must be balanced by the governmental interests at

stake, Deputy Lovejoy is not entitled to qualified immunity. *Garner*, 471 U.S. at 8. As alleged, Plaintiff was not confined in the sweltering hot police car for a brief period of time, but rather for several hours, resulting in a physical condition that was so serious she was rejected by the jail and taken to the hospital. Based on the complaint, there existed no reason for her arrest and the subsequent search of her vehicle while she was confined in the police car, nor was Plaintiff dangerous. Therefore, no governmental interests were at stake. As such, Deputy Lovejoy is not entitled to qualified immunity at this stage of the proceedings for this claim either.[3]

### iii.   Excessively Tight Handcuffs for Several Hours

It is well-established that tightly fastening handcuffs such that they cause injury can constitute excessive force. *See Palmer*, 9 F.3d at 1436 (9th Cir. 1993), *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989). Plaintiff alleges she was held in "excessively tight handcuffs for several hours" and sustained "injuries to her wrists and shoulders from being placed in overly tight handcuffs for several hours." (Compl., 8, 11 (¶¶ 51, 67).) Moreover, Plaintiff alleges that she requested Deputy Lovejoy remove the handcuffs because of the harm they were causing to her shoulders and wrists after six hours of custody, but "LOVEJOY became angry and refused PLAINTIFF's request[]." (*Id.* at 7 (¶ 42).) Taking these allegations as true, Deputy Lovejoy is not entitled to qualified immunity. *Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) (overly tight handcuffing that hurt and damaged plaintiff's wrists violated a clearly established constitutional right to be free from excessive force).

---

[3] Determining claims of qualified immunity "at the motion-to-dismiss stage raises special problems for legal decision-making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). It puts the Court in the difficult position of deciding "far-reaching constitutional questions on a non-existent factual record." *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004). But dismissal based on qualified immunity is not appropriate unless it can be determined based on the complaint alone that qualified immunity applies. *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016).

### 3. State Law Claims

Defendants also move to dismiss Plaintiff's false arrest, negligence, and Bane Act claims as to DOES 7-10 under the theory that the complaint does not allege sufficient facts for supervisory or policymaking liability, and that it is unclear if these defendants participated in the traffic stop or otherwise authorized or approved the conduct that occurred. The Court agrees for the reasons explained above.[4]

Defendants also assert certain statutory immunities under California Government Codes § 820.2 and § 820.8. Section 820.2 provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code § 820.2. Section 820.8 states that a "public employee is not liable for an injury caused by the act or omission of another person." Cal. Gov. Code § 820.8. By extension, when a public employee is immune under § 820, the public entity is also protected. Cal. Gov. Code § 815.2(b); *Elton v. County of Orange*, 3 Cal. App. 3d 1053, 1056-57 (1970). However, California law expressly imposes liability on a public employee for injury caused by his or her own act or omission. Cal. Gov. Code § 820(a); *Johnson v. Duffy*, 588 F.2d 740, 744 (9th Cir. 1978).

Because the complaint is unclear as to the DOE defendants' particularized involvement, the Court cannot determine if immunity would apply to them. But, as alleged, California's statutory immunity does not apply to Deputy Lovejoy. *See Padilla v. City of Alhambra*, 2007 U.S. Dist. LEXIS 104051, *87 (C.D. Cal. 2007)

---

[4] Moreover, the current allegations are insufficient for any DOE defendant to be held liable under the Bane Act because there are no facts indicating DOES 1-10 had the required intent to interfere with Plaintiff's rights. *Yates v. E. Side Union High Sch. Dist.*, 2021 U.S. DIST. LEXIS 156310, *19 (N.D. Cal. 2021) ("The Bane Act requires evidence that a defendant interfered with the exercise of a plaintiff's rights under federal or California law" by threat, intimidation, or coercion).

("[Cal. Gov. Code] § 820.2 does not shield police officers from claims that they used excessive force in effectuating a detention or arrest"). And because Deputy Lovejoy is not immune from liability, the County may be held liable. Cal. Gov. Code § 815.2(a); *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002) ("California…imposes liability on counties under the doctrine of respondeat superior for acts of county employees).

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** the motion to dismiss DOES 1-10. The Court **DENIES** the motion to dismiss Plaintiff's causes of action against Defendant Deputy Lovejoy and the County of San Diego. Plaintiff is granted leave to amend her complaint to cure the deficiencies described above. Plaintiff must file an Amended Complaint within 45 days of the entry of this order.

**IT IS SO ORDERED.**

Dated:  June 17, 2022

Honorable Barry Ted Moskowitz
United States District Judge

3:21-cv-01622-BTM-AGS